

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUL 26  PM 4: 54

LORETTA G. WHYTE
CLERK

## UNITED STATES  DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DAVID LAPELL | CIVIL ACTION |
| versus | NO. 04-0742 |
| BURL CAIN, WARDEN | SECTION: "N" (3) |

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

___ Fee_____
___ Process_____
X_ Dktd_____
___ CtRmDep_____
___ Doc. No _____

Petitioner, David Lapell, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On November 29, 1995, he was convicted of first degree robbery in violation of La.Rev.Stat.Ann. § 14:64.1.[2]  On December 7, 1995, the state filed a multiple bill of information alleging that he was a second offender.[3]  On March 7, 1996, the trial judge found petitioner to be a second offender and sentenced him as such to a term of thirty years imprisonment, without benefit of probation, parole, or suspension of sentence, with credit for time served.[4]  On November 14, 1996, the Louisiana Fifth Circuit Court of Appeal affirmed petitioner's conviction and sentence.[5]

On April 3, 1997, petitioner filed with the state district court an application for post-conviction relief,[6] which he supplemented on April 21, 1997.[7] That application was denied on April 29, 1997.[8] Petitioner next filed with the Louisiana Fifth Circuit Court of Appeal an application for

---

[2] State Rec., Vol. IV of XIII, transcript of November 29, 1995, p. 150; State Rec., Vol. I of XIII, minute entry dated November 29, 1995; State Rec., Vol. I of XIII, jury verdict form.

[3] State Rec., Vol. I of XIII, multiple bill of information.

[4] State Rec., Vol. IV of XIII, transcript of March 7, 1996, p. 5; State Rec., Vol. I of XIII, minute entry dated March 7, 1996.

[5] State v. Lapell, No. 96-KA-463 (La. App. 5th Cir. Nov. 14, 1996) (unpublished); State Rec., Vol. I of XIII.

[6] State Rec., Vol. I of XIII.

[7] State Rec., Vol. I of XIII.

[8] State Rec., Vol. I of XIII, Order dated April 29, 1997.

supervisory review[9] which was denied on September 19, 1997.[10]  Petitioner then filed with the

Louisiana Supreme Court an application for a writ of certiorari[11] which was denied on May 1, 1998.[12]

On June 11, 1998, petitioner filed with the state district court a second application

for post-conviction relief.[13]  That application was denied on August 7, 1998.[14]  Petitioner next filed

with the Louisiana Fifth Circuit Court of Appeal an application for a writ of mandamus which was

denied on October 22, 1998.[15]  Petitioner then filed with the Louisiana Supreme Court an application

for a writ of certiorari.[16]  On June 18, 1999, that application was granted in part and the matter was

remanded to the state district court with an order that petitioner be granted an out-of-time appeal and

appointed counsel.[17]

---

[9]  State Rec., Vol. I of XIII.

[10]  State v. Lapell, No. 97-KH-904 (La. App. 5th Cir. Sept. 19, 1997) (unpublished); State Rec., Vol. II of XIII.

[11]  State Rec., Vol. X of XIII.

[12]  State ex rel. Lapell v. State, 805 So.2d 195 (La. 1998) (No. 97-KH-2821); State Rec., Vol. X of XIII.

[13]  State Rec., Vol. II of XIII.

[14]  State Rec., Vol. VI of XIII, Order dated August 7, 1998.

[15]  State v. Lapell, No. 98-KH-1091 (La. App. 5th Cir. Oct. 22, 1998) (unpublished); State Rec., Vol. II of XIII.

[16]  State Rec., Vol. XI of XIII.

[17]  State ex rel. Lapell v. State, 745 So.2d 613 (La. 1999) (No. 99-KH-0112); State Rec., Vol. II of XIII.

On October 22, 1999, the state district court granted petitioner an out-of-time appeal and appointed the Louisiana Appellate Project to represent him.[18]  On December 13, 2000, the Louisiana Fifth Circuit Court of Appeal again affirmed petitioner's conviction and sentence.[19] Petitioner next filed with the Louisiana Supreme Court an application for supervisory writs[20] which was denied on January 4, 2002.[21]

While the out-of-time appeal was pending, petitioner returned to the state district to file a "Motion to Correct Illegal and Excessive Sentence" on September 19, 2000.[22] That motion was denied on October 3, 2000.[23] Petitioner next filed a writ application challenging that denial with the Louisiana Fifth Circuit Court of Appeal.  That application was denied on November 13, 2000.[24] Petitioner then filed with the Louisiana Supreme Court an application for a writ of certiorari[25] which was denied on September 14, 2001.[26]

---

[18]   State Rec., Vol. II of XIII, Order dated October 22, 1999.

[19]   State v. Lapell, 777 So.2d 541 (La. App. 5th Cir. 2000) (No. 00-KA-1056); State Rec., Vol. II of XIII.

[20]   State Rec., Vol. XI of XIII.

[21]   State v. Lapell, 805 So.2d 1192 (La. 2002) (No. 2001-KO-0439); State Rec., Vol. XI of XIII.

[22]   State Rec., Vol. II of XIII.

[23]   State Rec., Vol. II of XIII, Order dated October 3, 2000.

[24]   State v. Lapell, No. 00-KH-1758 (La. App. 5th Cir. Nov. 13, 2000) (unpublished); State Rec., Vol. II of XIII.

[25]   State Rec., Vol. XI of XIII.

[26]   State ex rel. Lapell v. State, 796 So.2d 675 (La. 2001) (No. 2000-KH-3546); State Rec., Vol. XI of XIII.

On July 22, 2002, petitioner filed with the state district court yet another post-conviction application.[27] That application was denied on October 29, 2002.[28] Petitioner filed a motion for reconsideration[29] which was denied on November 20, 2002.[30] He then filed with the Louisiana Fifth Circuit Court of Appeal an application for a writ of review which was denied on December 10, 2002.[31] Petitioner then filed with the Louisiana Supreme Court an application for a writ of certiorari[32] which was denied on February 13, 2004.[33]

On March 2, 2004, petitioner filed this federal application for *habeas corpus* relief.[34] In support of his application, petitioner claims:

1. The trial judge erred in misapplying La.C.Cr.P. art. 930.4 in petitioner's state post-conviction proceedings;

2. The bill of information was defective;

3. Petitioner's trial counsel was ineffective when he failed to file a motion to quash the bill of information;

---

[27]   State Rec., Vol. III of XIII.

[28]   State Rec., Vol. III of XIII, Order dated October 29, 2002.

[29]   State Rec., Vol. IV of XIII.

[30]   State Rec., Vol. IV of XIII, Order dated November 20, 2002.

[31]   Lapell v. State, No. 02-KH-1207 (La. App. 5th Cir. Dec. 10, 2002) (unpublished); State Rec., Vol. XII of XIII.

[32]   State Rec., Vol. XII of XIII.

[33]   State ex rel. Lapell v. State, 867 So.2d 676 (La. 2004) (No. 2003-KH-0130); State Rec., Vol. XII of XIII.

[34]   Rec. Doc. 1.

4. The multiple bill of information was defective;

5. Petitioner's trial counsel was ineffective when he failed to file a motion to quash the multiple bill of information;

6. Petitioner's trial counsel was ineffective when he failed to object to improper comments made by the prosecutor during closing arguments;

7. Petitioner was denied his rights under the Confrontation Clause;

8. Petitioner's trial counsel was ineffective when he failed to object to the violation of petitioner's rights under the Confrontation Clause;

9. The trial court erred in overruling defense counsel's objection to improper cross-examination of petitioner;

10. Petitioner's appellate counsel was ineffective when he failed to argue on appeal that the trial court erred in overruling defense counsel's objection to improper cross-examination of petitioner;

11. Petitioner's trial counsel was ineffective when he failed to object to evidence and a jury instruction regarding "flight";

12. Petitioner received ineffective assistance of counsel during the multiple offender proceedings;[35]

---

[35] The Court has consolidated into this single claim the allegations made by petitioner in Claims No. 12, 14, and 15 of his original federal application and Claim No. 16 of his supplement (Rec. Doc. 10).

13. Petitioner's trial counsel was ineffective when he failed to interview and subpoena Taifa P. Griffith; and

14. On remand, the state district court failed to comply with the order of the Louisiana Fifth Circuit Court of Appeal regarding petitioner's sentencing.[36]

In its response, the state takes the position that petitioner's federal application is timely filed and that he exhausted his state court remedies.[37] In light of those concessions, this Court will address petitioner's claims on the merits.

Standard of Review

The AEDPA comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

---

[36] The last claim was raised by petitioner in a supplemental filing. Rec. Doc. 11.

[37] Rec. Doc. 7, pp. 8 and 11.

§ 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.    The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.    The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts

of this case as follows:

On June 22 1995, Debbie Smith (Smith) was driving a cab for Westbank Cab.  At approximately 7:30 a.m., Smith was parked in the parking lot of the K & B Drug Store located at 4500 Westbank Expressway near West Jefferson Hospital. The Defendant rode up to her cab on a bike and asked Smith how much the fare would be to go to Charity Hospital.   Smith told the Defendant that it would be approximately $16 and he told Smith that he would be back.   The Defendant left and, when he came back, he again spoke to Smith. The Defendant again rode off on the bike.  The Defendant came back again, threw his bike down, and jumped into the back of Smith's cab.

When the Defendant got into the cab, he told Smith that he was going to ride for free and told Smith that he had a gun. When the Defendant told Smith that he had a gun, he reached into his waistband.   The Defendant told Smith to hand over her money. Smith handed the Defendant $20 from her top shirt pocket.   The Defendant then told Smith to drive to Estalote Street where they picked up a second passenger.   The defendant told Smith to drive to Pailet Street.  Smith stated that the Defendant appeared to be looking for someone.   When the person was not there, the Defendant instructed Smith to drive to the Scottsdale area.

The Defendant and the other man then exited the cab and fled. Smith left the area and called her dispatcher to report the robbery. Smith gave a description of the Defendant and the clothes that he was wearing. Smith then parked her cab in a lighted area so she could calm down.

On that same date, Randy Landry (Landry) was also driving a cab for Westbank Cab. Landry heard the call which Smith made to the dispatcher to report the robbery. Landry heard the description of the robbers and headed to the area where the robbers had gotten out of Smith's cab.

As Landry arrived in the area he saw a Jefferson Parish Deputy and flagged him down and reported the robbery. The deputy then drove off and Landry continued to drive in the area. While Landry was driving, he saw the Defendant. Landry stopped when he saw the Defendant and backed up his cab. When the Defendant saw Landry, he began to run. The Defendant ran to a building and Landry gave chase in his cab. Landry watched as the Defendant knocked on a door in the building and entered. Landry then called his dispatcher to tell the police where the Defendant was. The police arrived and Landry pointed out the door that the Defendant had entered. The police entered the building and arrested the Defendant.

Deputy Donald Tusa of the Jefferson Parish Sheriff's Office was on duty on June 22, 1995. Deputy Tusa was informed by another deputy of the robbery of Smith. He was also informed that Landry had located the robbers. Deputy Tusa went to the apartment complex to help apprehend the robbers. He and another deputy entered the apartment that they were told the robbers had entered. Inside, the deputies found the Defendant and the other man. The deputies had to physically subdue the Defendant.

Deputy Allen Joanas was also on duty that night. He heard on the radio that Landry had flagged down Sergeant Jim Ducote and told him of the robbery of Smith. Deputy Joanas met with Smith. Deputy Joanas accompanied Smith to the area where the Defendant was arrested and Smith identified the Defendant as one of the robbers. Deputy Joanas proceeded to the area where Smith picked up the Defendant and retrieved the bike that Defendant had been riding.

....

On November 28 through 29, 1995, trial was held before a twelve person jury. At trial, the Defendant presented a different version of the events that transpired on the night of June 22, 1995.

The Defendant testified at trial after being informed by the trial judge, outside of the presence of the jury, of his right to remain

silent.  At the beginning of his testimony, the Defendant admitted that he had been previously convicted of burglary twice, that he had been convicted of misdemeanor theft of under $100, and that he had been convicted of misdemeanor possession of drug paraphernalia.

The Defendant then testified that on the night of June 22, 1995, he was riding his bike in the 4500 block of the Westbank Expressway.  As he rode near Smith, who was sitting in her parked cab, she stopped him.  She asked him if he knew where she could buy some crack cocaine.  He told her that he might and he got into her cab. The Defendant denied threatening Smith when he got into the cab. They drove to Estalote Street and saw Tefee Griffin (Griffin). [FN3] They stopped and asked Griffin if he knew where they could get drugs in the Scottsdale area.  Griffin got in the car and they drove to Scottsdale.

> FN3.  It is noted that the transcript identifies the second passenger as "Tefee Griffin," but the bill of information spells the second passenger's name as "Tafia Griffith."

When they arrived in the Scottsdale area, Griffin pointed out an apartment.  Smith gave the Defendant $20 to buy crack cocaine. The Defendant and Griffin got out of the cab and went into the apartment leaving Smith in her cab.  Inside the apartment, the two men purchased crack cocaine.  Griffin convinced the Defendant to smoke the crack cocaine which they had just bought with Smith's money and not bring her any of it.  The Defendant and Griffin went outside to smoke the crack cocaine and then went back into the apartment.  The Defendant was in the apartment when the deputies entered and arrested him and Griffin.

The jury apparently believed the State's version of the events and not the Defendant's, because they found the Defendant guilty as charged.[38]

---

[38]   State v. Lapell, 777 So.2d 541, 542-44 (La. App. 5th Cir. 2000) (No. 00-KA-1056); State Rec., Vol. II of XIII.

<u>Misapplication of La.C.Cr.P. 930.4</u>

Petitioner's first claim is that the state district court erred in denying petitioner's post-conviction claims on procedural grounds pursuant to La.C.Cr.P. art. 930.4 without complying with the provisions of La.C.Cr.P. arts. 930.4(F)[39] and 930.7(B).[40]

Petitioner's claim apparently relates to the state district court's decision of October 29, 2002, concerning his third state post-conviction application.[41]  In that decision, the trial judge denied several of petitioner's claims on procedural grounds.  While this Court notes that the bases for many of the trial judge's rulings are not readily apparent from the state record, the Court nevertheless finds that any alleged misapplication of La.C.Cr.P. art. 930.4 would not warrant federal relief.  The state appellate courts found that the trial judge correctly applied article 930.4, and "'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" <u>Trevino v. Johnson</u>, 168 F.3d 173, 184 (5th Cir. 1999) (quoting <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991)); <u>see also</u>  <u>Molo v. Johnson</u>, 207 F.3d 773, 776 n.9 (5th Cir. 2000) ("Federal

_____

[39]  La.C.Cr.P. art. 930.4(F) provides:

> If the court considers dismissing an application for failure of the petitioner to raise the claim in the proceedings leading to conviction, failure to urge the claim on appeal, or failure to include the claim in a prior application, the court shall order the petitioner to state the reasons for his failure.  If the court finds that the failure was excusable, it shall consider the merits of the claim.

[40]  La.C.Cr.P. art. 930.7(B) provides:

> The court may appoint counsel for an indigent petitioner when it orders an evidentiary hearing, authorizes the taking of depositions, or authorizes requests for admissions of fact or genuineness of documents, when such evidence is necessary for the disposition of procedural objections raised by the respondent.

[41]  State Rec., Vol. III of XIII, Order dated October 29, 2002.

habeas review does not extend to state court conclusions of state law."); Hogue v. Johnson, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal *habeas*); Dickerson v. Guste, 932 F.2d 1142, 1145 (a federal *habeas* court does not sit as a "super" state supreme court to review errors under state law).

Nevertheless, for the reasons set forth later in this opinion, the Court finds that the application of a procedural bar as to any of petitioner's claim would be problematic. Accordingly, this Court will afford petitioner a review of all of his claims on the merits.

<u>Defective Bills of Information</u>

Petitioner claims that both the original bill of information and the multiple bill of information were defective.[42] The state district court rejected those claims in the post-conviction proceedings on the basis that they were "repetitive," having previously been asserted and rejected in connection with a prior post-conviction application filed on April 22, 2002.[43] Based on that ruling, the state argues that the claims are procedurally barred in this proceeding. This Court disagrees.

Regarding procedural bars, the United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision. To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state

---

[42]  These claims were Claims No. 2 and 4 of petitioner's federal application.

[43]  State Rec., Vol. III of XIII, Order dated October 29, 2002 (denying claims number 1 and 3).

> courts, and applied to the majority of similar claims. This rule
> applies to state court judgments on both substantive and procedural
> grounds. Where there has been one reasoned state judgment rejecting
> a federal claim, later unexplained orders upholding that judgment or
> rejecting the same claim are presumed to rest upon the same ground.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted). "When the state court has

relied on an independent and adequate state procedural rule, federal habeas review is barred unless

the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result

in a fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999).

This Court notes that a claim dismissed on the ground that it is repetitive is not

procedurally barred. The United States Supreme Court has noted that when a "state decision rests

upon a prohibition against *further* state review," the decision is not based on a procedural default

and "its effect upon the availability of federal habeas is nil." Ylst v. Nunnemaker, 501 U.S. 797, 804

n.3 (1991) (emphasis in original); see also Bennett v. Whitley, 41 F.3d 1581, 1583 (5th Cir. 1994)

(holding that a denial based on La.C.Cr.P. art. 930.4 (A), which precludes a Louisiana court from

considering the merits of a claim that has already been raised on direct appeal, does not bar federal

review).

Rather, when a claim has been dismissed as repetitive, the Court simply looks through

that denial back to the original decision which addressed the claim on the merits. However, it

appears that cannot be done in the instant case. The state district court stated that it had previously

addressed the instant claims in its decision on a post-conviction application filed on April 22, 2002.

However, there was no such post-conviction application filed in this case, and the Court finds no

ruling in the state court record of this case which addresses the merits of petitioner's claims.[44]

Nevertheless, even without the benefit of a state court ruling with respect to these claims, the Court

notes that petitioner's claims clearly do not warrant federal relief for the following reasons.

The sufficiency of a state charging instrument is not a matter for federal *habeas* relief

unless it can be shown that the instrument is so defective that it deprives the state court of

jurisdiction. McKay v. Collins, 12 F.3d 66, 68 (5th Cir.), reh'g granted in part on other grounds sub

nom., Williams v. Collins, 12 F.3d 70 (5th Cir. 1994) (per curiam).   The United States Fifth Circuit

Court of Appeals has observed that the sufficiency of a state charging instrument is fatally defective

only when there are no circumstances under which there could be a valid conviction based on that

instrument, and that "determination can be made *only* by looking to the law of the state." Liner v.

Phelps, 731 F.2d 1201, 1203 (5th Cir. 1984) (internal quotation marks omitted) (emphasis in

original).

The original bill of information provided:

JOHN M. MAMOULIDES, District Attorney of the Twenty-Fourth Judicial District Court of the State of Louisiana, who, in the name and by the authority of the said State, prosecutes in its behalf, through the undersigned assistant district attorney, comes into the Twenty-Fourth Judicial Court of the State of Louisiana, in and for the PARISH OF JEFFERSON and gives the said Court here to understand and be informed that one

TAIFA P. GRIFFITH
DAVID LAPELL

late of the Parish aforesaid, on or about the 22nd day of June in the year of our Lord, One Thousand Nine Hundred and Ninety-Five with

---

[44] Petitioner contends that the trial judge is referring to a post-conviction application petitioner filed in another of his criminal cases. Rec. Doc. 1, supporting memorandum, p. 15.

force of arms, in the Parish aforesaid, and within the jurisdiction of
the Twenty-Fourth Judicial District Court of Louisiana, in and for the
Parish aforesaid, violated R.S. 14:64.1 in that they did rob Debbie
Smith while leading the victim to reasonably believe he was armed
with a dangerous weapon, contrary to the form of the Statute of the
State of Louisiana, and against the peace and dignity of the State.[45]

Petitioner contends that the bill of information was fatally defective because it did

not conclude with the identical concluding language of the sample form provided in La.C.Cr.P. art.

463, i.e. "contrary to the law of the state of Louisiana and against the peace and dignity of the same."

Petitioner's claim has no merit for two reasons. First and foremost, the bill of information is not

defective. The exact wording of the form in article 463 is not required; rather, the article expressly

provides that a bill of information only need be "substantially" in the form provided. It is obvious

that the concluding phrase of petitioner's bill of information, i.e. "contrary to the form of the Statute

of the State of Louisiana, and against the peace and dignity of the State," is substantially the same

as the phrase "contrary to the law of the state of Louisiana and against the peace and dignity of the

same" provided in article 463. Second, even if the phrases were not substantially the same, any

defect with respect to that phrase clearly does not deprive the state court of jurisdiction. The

Louisiana Supreme Court has held that even the complete omission of the phrase is merely a formal

defect which can be waived. State v. Russell, 397 So.2d 1319, 1324 (La. 1981). Moreover,

Louisiana law allows formal defects in charging instruments to be cured by corrective amendments

at any time. La.C.Cr.P. art. 487. Therefore, even if the bill of information was defective as

---

[45] State Rec., Vol. I of XIII, bill of information. The bill of information was later dismissed as
to Taifa P. Griffith.

petitioner alleges, the defect is not one of such magnitude to deprive the trial court of jurisdiction and so cannot be the basis for federal relief.

Petitioner also argues that the multiple bill of information[46] was similarly defective in that it failed to include the phrase "contrary to the law of the state of Louisiana and against the peace and dignity of the same" provided in article 463. The Court likewise rejects that claim. As an initial matter, the Court notes that petitioner has offered no legal authority whatsoever in support of his implicit contention that article 463 has *any* applicability to a multiple bill of information and the article's text does not naturally lead one to that conclusion. Moreover, Louisiana jurisprudence rejects petitioner's contention that article 463 applies to a multiple bill of information. State v. Banks, 612 So.2d 822, 826 (La. App. 1st Cir. 1992), writ denied, 614 So.2d 1254 (La. 1993).[47] Accordingly, the Court finds that petitioner's contention is wrong as a matter of law.

For the foregoing reasons, the Court finds that petitioner's claims concerning the original bill of information and the multiple bill of information should be denied.

### Confrontation Clause

Petitioner contends that his rights under the Confrontation Clause[48] were violated when the victim, Debbie Smith, was allowed to testify regarding conversations she had with her

---

[46]  State Rec., Vol. I of XIII, multiple bill of information.

[47]   Rather, the institution of multiple offender proceedings is governed by La.Rev.Stat.Ann. § 15:529.1(D)(1)(a).

[48]  The Confrontation Clause of the United States Constitution provides that "the accused shall enjoy the right ... to be confronted by the witnesses against him." U.S. Const. amend. VI.

dispatcher.   Petitioner argues that the dispatcher's declarations in the conversations were

inadmissible hearsay, and petitioner was denied the opportunity to confront the dispatcher.[49]

As an initial matter, this Court notes that even if petitioner could demonstrate that

hearsay evidence was related to the jury, it would not necessarily follow that he is entitled to relief.

The United States Fifth Circuit Court of Appeals has held:

> The wrongful admission of hearsay evidence violates the
> Confrontation Clause only when the evidence was a crucial, critical
> or highly significant factor in the framework of the whole trial.  In
> making this determination, we consider five general factors derived
> from the Supreme Court's opinion in Dutton v. Evans, 400 U.S. 74,
> 87, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970):
>
> > (1) whether the hearsay evidence was crucial or devastating;
> > (2) whether prosecutors misused a confession or otherwise
> > engaged in misconduct;
> > (3) whether a joint trial or the wholesale denial of cross-
> > examination was involved;
> > (4) whether the most important prosecution witness, as well
> > as other prosecution witnesses, was available for cross-
> > examination; and
> > (5) the degree to which the hearsay evidence is supported by
> > indicia of [its] reliability.

---

[49]   Petitioner listed this as Claim No. 7 in his federal application.  The state argues that this claim
is procedurally barred.  It is true that the state district court denied the claim on the basis that the
claim was deemed waived because it was not asserted on direct appeal.  State Rec., Vol. III of XIII,
Order dated October 29, 2002 (denial of claim number 6).  That ruling appears to be based on
La.C.Cr.P. art. 930.4(C), which provides: "If the application alleges a claim which the petitioner
*raised in the trial court* and inexcusably failed to pursue on appeal, the court may deny relief."
(Emphasis added.)  However, this claim was not raised during the trial.  Therefore, the denial based
on article 930.4(C) appears suspect.  The Court notes that it appears that the claim could have been
denied pursuant to La.C.Cr.P. art. 930.4(B), which provides: "If the application alleges a claim of
which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to
conviction, the court may deny relief."  However, that was not in fact the basis on which petitioner's
claim was denied.  In any event, this Court need not decide the issue of whether petitioner's claim
is procedurally barred, in that the claim clearly fails on the merits.  See Glover v. Hargett, 56 F.3d
682, 684 (5th Cir. 1995); Wiley v. Puckett, 969 F.2d 86, 104 (5th Cir. 1992).

Gochicoa v. Johnson, 118 F.3d 440, 446 (5th Cir. 1997) (quotation marks and citations omitted). However, in the instant case, the Court has reviewed the victim's testimony, and there were only three instances in which the victim testified regarding conversations with the dispatcher, and none of those instances conveyed inadmissible hearsay declarations of the dispatcher.

The first instance in the victim's testimony in which she mentioned a conversation with her dispatcher concerned a fare estimate. The victim testified: "The defendant rode up on a bike to my cab and asked me how much it would cost to go to Charity Hospital. I wasn't sure. I'd only been driving for a couple of months. So I got on the radio and asked the dispatcher. She told me approximately $16."[50] That statement is not hearsay. "What is or is not hearsay evidence in a state court trial is governed by state law." Gochicoa, 118 F.3d at 446. Hearsay evidence is in-court testimony of out-of-court statements that are offered for their truth, requiring credibility to rest upon the statements alone, and not the credibility of the speaker. State v. Butler, 646 So. 2d 925, 929 (La. App. 1st Cir. 1994). The dispatcher's statement that the cab fare to Charity Hospital would be approximately $16 was not offered to establish the true cost of such a cab ride; what the cab ride would cost was irrelevant to the state's case against petitioner.

The second instance in the victim's testimony in which she mentioned a conversation with her dispatcher concerned the victim's alerting the dispatcher of the robbery. The victim testified:

> A.    I made a U-turn and drove back to Scottsdale and the Expressway. That's when I dispatched the robbery.

---

[50] State Rec., Vol. IV of XIII, transcript of November 29, 1995, p. 20.

Q.    Can you explain to the jury what you mean when you say
      "dispatched the robbery."

A.    Okay, the code we use is 45. That's if a cab driver is in
      trouble of any kind. We go on the radio, call our number, and
      we say 45. The dispatcher knows what's going on and
      immediately comes back and asks what the problem is.

Q.    Okay, and you did that?

A.    Yes, sir.[51]

The victim continued:

Q.    What did you dispatch to the dispatcher? Were you able to
      give a description?

A.    Yes, sir.

Q.    And what was that? Do you recall?

A.    He had green shorts on, with a green shirt, black.[52]

In those portions of the testimony, the victim related only what she said to the dispatcher. The victim

did not relate any declarations whatsoever *made by the dispatcher*. Therefore, clearly there were no

hearsay or Confrontation Clause problems regarding that testimony.

        The third instance in the victim's testimony in which she mentioned a conversation

with her dispatcher came in response to a question concerning whether the victim was asked to return

to identify the suspects. She testified:

        Yes, sir. About, I guess, about fifteen or twenty minutes after
        that. The dispatcher came back on the air and asked me to go back to
        Scottsdale, that they had apprehended the two men and there was

---

[51] State Rec., Vol. IV of XIII, transcript of November 29, 1995, p. 23.

[52] State Rec., Vol. IV of XIII, transcript of November 29, 1995, p. 23.

> police there, because I didn't want to go back by myself, of course.
> There was police officers there and other cab drivers.[53]

Again, the dispatcher's statement was not offered for its truth; rather, it was offered simply to explain what caused the victim to return to identify the suspects who had been apprehended. Therefore, it was not inadmissible hearsay.

For the foregoing reasons, the Court finds that the victim's testimony violated neither the state evidentiary laws regarding hearsay nor the federal Confrontation Clause. Accordingly, petitioner's claim should be rejected.

### Improper Cross-Examination

Petitioner claims that the trial judge erroneously overruled defense counsel's objection to the prosecutor's cross-examination of petitioner regarding a prior conviction and his employment status.[54]

---

[53] State Rec., Vol. IV of XIII, transcript of November 29, 1995, p. 24.

[54] Petitioner listed this as Claim No. 9 in his federal application. The state argues that this claim is procedurally barred. It is true that the state district court denied the claim as "repetitive" because it had been asserted "as issue 4 in his April 21, 1997 filing" and in petitioner's 1997 Louisiana Supreme Court writ application. State Rec., Vol. III of XIII, Order dated October 29, 2002 (denying claim number 8). This Court assumes that the ruling is based on La.C.Cr.P. art. 930.4(D), which provides: "A successive application may be dismissed if it fails to raise a new or different claim." However, the claim raised in the 1997 trial court filing was that petitioner's counsel was ineffective in failing to object to the prosecutor's objections, not that the trial court erred in overruling such objections. State Rec., Vol. I of XIII. It is true that a somewhat similar claim was asserted in the 1997 writ application as assignment of error number 4 (i.e. "Whether the trial court erroneously allowed the prosecutor to introduced [sic] evidence of other crimes, violated appellant's right to a fair trial?"). State Rec., Vol. X of XIII, application for writ of certiorari. However, the instant claim is distinct and broader. Therefore, the denial based on article 930.4(D) appears suspect. Nevertheless, this Court need not decide the issue of whether petitioner's claim is procedurally barred, in that the claim clearly fails on the merits. See Glover v. Hargett, 56 F.3d 682, 684 (5th Cir. 1995); Wiley v. Puckett, 969 F.2d 86, 104 (5th Cir. 1992).

Regarding the issue of the prior conviction, petitioner admitted the fact of his prior convictions on direct examination. The trial transcript reflects the following exchange:

EXAMINATION BY MR. BIRI [defense counsel]:

Q.   David, you have a conviction, two convictions, for burglary, don't you?

A.   Yes, sir.

Q.   And you also have a conviction for theft under $100, which is a misdemeanor?

A.   Yes, sir.

Q.   And you also have a conviction for a misdemeanor drug paraphernalia charge; is that correct?

A.   Yes, sir.[55]

The prosecution also delved into the issue on cross-examination, which resulted in objections by defense counsel which were overruled. The pertinent section of the transcript reflects the following:

Q.   You pled guilty to two different cases of burglary, that's correct?

A.   Yes, I did.

Q.   And you pled guilty to a case of theft under $100, that's correct?

A.   Yes, I did.

Q.   And you pled guilty on that same day, in that same case, to being in possession of drug paraphernalia, that being a crack pipe –

---

[55] State Rec., Vol. IV of XIII, transcript of November 29, 1995, p. 83.

MR. BIRI:

Objection. Approach the bench.

[BEGIN BENCH CONFERENCE SOTTO VOCE.]

MR. BIRI:

First of all, the evidence code is very clear as to what can be discussed. We've already admitted to the convictions. You can get the date of the conviction in.

Secondly, under the First Amendment, because we've talked about a defense, we've talked about the use of cocaine. He's admitted that he bought it. The fact as to what kind of drug paraphernalia is irrelevant. And now the D.A. has mentioned and on the scope of the Code of Evidence as to what the drug paraphernalia was. It's clearly a violation of the Code of Evidence. It's very plain and simple as to what limitations he is under and he cannot mention what type of drug paraphernalia. He admitted to the offense. You can get the date and there may be some other factors and it's all mentioned in the code. But mentioning the type of evidence – And that drug paraphernalia is a violation of that codal section and that's what I base my objection on.

MR. DOHRE [the prosecutor]:

Your Honor, these are the facts in the case –

THE COURT:

Mr. Biri, assuming what you say is true, I believe the defense has opened the door for this. On your direct examination you questioned him about – You asked him very specifically about what type of drugs he was going to get. You asked him – The defense is that he was going down to help this lady get crack Cocaine and the question is relevant to cross examination.

MR. DOHRE:

I won't go into reall [sic] the –

MR. BIRI:

Your Honor, I don't really understand, but I'll just lodge my objection.

THE COURT:

- 22 -

> You asked him about it.

MR. BIRI:
> What is relevant is now open as far as his prior convictions?
He's admitted to the convictions.

THE COURT:
> Crack Cocaine paraphernalia.

MR. BIRI:
> Note my objection.

THE COURT:
> Okay.

[END BENCH CONFERENCE SOTTO VOCE.][56]

The United States Fifth Circuit Court of Appeals has held: "In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law." Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998). Therefore, to the extent that petitioner is arguing that the state courts merely misapplied state evidence law in allowing the questioning, his claim is not reviewable in this federal proceeding.

To the extent that petitioner is contending that the trial court's ruling violated his federal constitutional rights, he has failed to demonstrate that he is entitled to *habeas* relief on that basis. Even if the cross-examination were improper, that alone would not necessarily warrant *habeas* relief. The United States Fifth Circuit Court of Appeals has noted:

> We will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a "denial of fundamental fairness" under the Due Process Clause. The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction.

---

[56] State Rec., Vol. IV of XIII, transcript of November 29, 1995, pp. 92-94.

Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998) (citations omitted); see also Little, 162 F.3d at 862 ("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted."). In the instant case, the questioning regarding the drug paraphernalia conviction certainly does not rise to that level for the following reasons.

First, although the trial judge overruled the defense objection to the question of whether the drug paraphernalia involved was a crack pipe, petitioner never answered that question. After the judge's ruling, the prosecutor simply moved on to other matters.

Second, in any event, this Court fails to see how the intimation that the drug paraphernalia involved in the prior conviction was a crack pipe in any way harmed petitioner. At trial, petitioner admitted the fact of the prior conviction and that he was a crack user. Moreover, his defense to the instant charge is that he bought crack for the victim but ultimately smoked it himself. If anything, the revelation that petitioner's prior conviction was based on possession of a crack pipe would seem to bolster that testimony at trial.

In light of the overwhelming evidence against petitioner at trial, the trial judge's overruling of the defense objection to the prosecutor's question regarding the crack pipe cannot be said to have played a crucial, critical, and highly significant role in petitioner's conviction. Petitioner has failed to meet his burden to demonstrate that the trial court's evidentiary ruling resulted in a denial of fundamental fairness.

Petitioner's next contention is that the trial judge erred in overruling defense counsel's objection to the prosecutor's cross-examination of petitioner regarding his employment history. He points to the following excerpt from the transcript:

Q.    At the time of this offense, were you employed?

MR. BIRI:
>   Object to the relevancy.

THE COURT:
>   Overruled.

THE WITNESS:
>   No, sir.

EXAMINATION BY MR. DOHRE:

Q.      Were you unemployed or not unemployed?

MR. BIRI:
>   Object to the relevancy.

THE COURT:
>   Overruled.

THE WITNESS:
>   I work off and on with my father, do sheetrock work, a little janitor work.

EXAMINATION BY MR. DOHRE:

Q.      Well, would you say you were unemployed or not?  Yes or no?

A.      I would say yes.  Because I work off and on.

Q.      That's not what you told the police when you were booked, is it?

A.      What?

Q.      You told them you were unemployed, didn't you?

A.      Well, I might have told the police that because I was under the influence of drugs.[57]

Again, even if it is assumed that the trial judge erred in his evidentiary ruling allowing

petitioner to be questioned regarding his employment history, federal *habeas* relief is not warranted

---

[57]  State Rec., Vol. IV of XIII, transcript of November 29, 1995, pp. 94-95.

unless the resulting testimony was a crucial, critical, and highly significant role in petitioner's conviction. Clearly, it was not. Petitioner has failed to meet his burden to demonstrate that the trial court's evidentiary ruling resulted in a denial of fundamental fairness.

For all of the foregoing reasons, petitioner's claims regarding the trial judge's evidentiary rulings should be denied.

### Ineffective Assistance of Counsel

Petitioner claims that his counsel was ineffective. In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. See Strickland, 466 U.S. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide

range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986);

Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

   The appropriate standard for determining prejudice varies slightly depending on

whether the petitioner is challenging the actions of trial or appellate counsel.  In order to prove

prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to

undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice

occurred, courts must review the record to determine "the relative role that the alleged trial errors

played in the total context of [the] trial."  Crockett, 796 F.2d at 793.  In order to prove prejudice

with respect to a claim that appellate counsel was ineffective, a petitioner must show a reasonable

probability that he would have prevailed on appeal but for his counsel's deficient representation.

Briesno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins, 528 U.S. 259, 286,

120 S.Ct. 746, 764, 145 L.Ed.2d 756 (2000).  Therefore, petitioner must demonstrate a reasonable

probability that if appellate counsel's performance had not been deficient in the manner claimed, the

appellate court would have vacated or reversed the trial court judgment based on the alleged error.

Briesno, 274 F.3d at 210.

   Petitioner bears the burden of proof when asserting an ineffective assistance of

counsel claim.  Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel

was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson,

227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that petitioner has made an insufficient showing

as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose

of the claim without addressing the other prong.  Strickland, 466 U.S. at 697.

A claim of ineffective assistance of counsel is a mixed question of law and fact.

Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must defer to the state

court on such claims unless the state court's decision "was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United

States." 28 U.S.C. § 2254(d)(1).

In this case, petitioner argues that his counsel was ineffective in several respects.  The

Court will address each argument separately.

Petitioner argues that his trial counsel was ineffective in failing to file a motion to

quash the original bill of information because the language did not exactly track the sample language

provided in La.C.Cr.P. art. 463.[58]  The state district court rejected this claim, stating simply that

"[d]efendant's counsel did not err."[59]  This Court agrees.  As previously noted in this opinion, article

463 requires that the language of a bill of information only be "substantially" the same as the sample

language, and the language used in petitioner's bill of information met that requirement.[60]  Therefore,

any motion to quash the bill of information would have had no merit.  Counsel is not ineffective

when he fails to file a meritless motion.  See United States v. Kimler, 167 F.3d 889, 893 (5th Cir.

1999) ("An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful

---

[58]  Petitioner listed this as Claim No. 3 in his federal application.

[59]  State Rec., Vol. III of XIII, Order dated October 29, 2002 (denying claim number 2).

[60]  See the discussion at pages 15-16 of this opinion.

ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); Sones v. Hargett, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point."); Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."). Additionally, this Court notes that petitioner ultimately would have suffered no prejudice regardless. Assuming that the motion was filed and the bill of information had been quashed, the state could simply have issued a new or amended bill of information. In light of that fact, a successful outcome on the motion would have served no purpose other than to delay the criminal proceedings. See Pickney v. Cain, 337 F.3d 542, 545 (5th Cir. 2003). Accordingly, petitioner's claim has no merit because he can show neither deficient performance nor resulting prejudice.

Petitioner also claims that his counsel was ineffective in failing to file a motion to quash the multiple bill of information on the ground that it did not comply with La.C.Cr.P. art. 463.[61] The state district court judge also rejected this claim, again stating simply that "[d]efendant's counsel did not err."[62] This Court agrees. As noted previously in this opinion, article 463 is inapplicable to a multiple bill of information. State v. Banks, 612 So.2d 822, 825-26 (La. App. 1st Cir. 1992), writ denied, 614 So.2d 1254 (La. 1993). As a result, any such motion would have been meritless, and counsel was therefore not ineffective in failing to file it. Moreover, even if the multiple bill of information were quashed based on a technical defect, the state could simply have issued a new or

---

[61] Petitioner listed this as Claim No. 5 in his federal application.

[62] State Rec., Vol. III of XIII, Order dated October 29, 2002 (denying claim number 4).

amended multiple bill of information and, therefore, petitioner cannot show the required prejudice to support his claim.  Accordingly, this claim should likewise be rejected.

Petitioner next claims that his counsel was ineffective when he failed to object to improper comments and arguments made by the prosecutor during closing arguments.[63]  Specifically, petitioner contends that his testimony was mischaracterized by the prosecutor as an admission to the robbery and that the prosecutor made improper references to petitioner's prior convictions.

As to his first contention, petitioner points to the following comments made by the prosecutor during his closing argument:

1.    "Actually, he admits to robbery, which he says it was in the guise of buying drugs.  He admits to taking somebody's money and taking off with it."[64]

2.    "The defense today is a very interesting one, and one I've never seen before.  If you really listened to the defense, the defense basically is that he's not a robber, but that he is a robbing crack dealer.  That's basically what his defense is.  So

---

[63]   Petitioner listed this as Claim No. 6 in his federal application.  The state argues that this claim is procedurally barred.  It is true that the state district court denied the claim as "repetitive" because it had been asserted in petitioner's post-conviction filing of April 3, 1997.  State Rec., Vol. III of XIII, Order dated October 29, 2002 (denying claim number 5).  This Court assumes that the ruling is based on La.C.Cr.P. art. 930.4(D), which provides:  "A successive application may be dismissed if it fails to raise a new or different claim."  However, as previously noted, a claim dismissed on the ground that it is repetitive is not procedurally barred.  Rather the Court simply looks back to the prior decision addressing the claim.  The prior decision regarding this claim rejected the claim because it had been reviewed on appeal; therefore, the prior claim was also essentially rejected on the basis that it was repetitive.  State Rec., Vol. I of XIII, Order dated April 29, 1997.  However, in that appeal, the claim was not expressly raised; rather, appellate counsel filed only an Anders brief.  State v. Lapell, No. 96-KA-463 (La. App. 5th Cir. Nov. 14, 1996) (unpublished); State Rec., Vol. I of XIII; see Anders v. California, 386 U.S. 738 (1967).  Because the claim was not expressly raised or decided on the merits in that direct appeal, this Court cannot "look back" to that decision.

[64]   State Rec., Vol. IV of XIII, transcript of November 29, 1995, p. 119.

that you shouldn't find him guilty of robbery, because in effect he's a robbing crack dealer."[65]

3.   "The funny thing is, he admits to robbery, in his statement, which is a ridiculous story."[66]

While the Court agrees that petitioner chose an unusual defense, i.e. that he did not take the money in a robbery but rather absconded with the money voluntarily given to him to purchase crack cocaine for the victim, that was the defense petitioner chose to offer at trial. In light of that fact, the prosecutor did not act improperly in commenting on the defense during closing arguments. Moreover, the state correctly notes in its response that defense counsel did at one point object to the prosecutor's alleged mischaracterization of petitioner's testimony and his defense, and that objection was overruled.[67]  Additionally, the jurors were instructed that the closing arguments were not to be considered as evidence,[68] and there is no reason to believe that they failed to follow that instruction. In light of all of those considerations, petitioner has not demonstrated that counsel performed deficiently or that prejudice resulted.

As to petitioner's second contention, he points to the following comments made by the prosecutor during his closing argument:

---

[65]   State Rec., Vol. IV of XIII, transcript of November 29, 1995, p. 128.

[66]   State Rec., Vol. IV of XIII, transcript of November 29, 1995, p. 134.

[67]   State Rec., Vol. IV of XIII, transcript of November 29, 1995, p. 135.

[68]   State Rec., Vol. IV of XIII, transcript of November 29, 1995, p. 143 ("The opening statements and closing arguments are not to be considered as evidence."). The judge similarly advised the jury of that fact at the beginning of trial. State Rec., Vol. III of XIII, transcript of November 29, 1995, p. 9 ("What the lawyers say in closing argument is not evidence."). Even the prosecutor himself so advised the jury during his closing argument. State Rec., Vol. IV of XIII, transcript of November 29, 1995, p. 113 ("What we say now is not evidence.").

1.    "According to Mr. Lapell, who has admitted using drugs that day, who has admitted his three prior convictions this year, according to him, everybody else was lying except for him."[69]

2.    "But the man with the convictions that you're allowed to use in judging his credibility, and you're allowed to use the reasonableness of what he said, which is just unbelievable."[70]

3.    "In fact, that story of his, it's not credible at all.  When you weigh that with the reasonableness of what he says, weigh that with his prior convictions, if you weigh that with his stake or interest, there's only one verdict that's possible in this case, that would be supported by the evidence, and that's guilty as charged."[71]

4.    "You would have to believe, to find this man not guilty, you would have to believe that a three time convicted felon, that the man who was using drugs that, by admission, that day, that the man who was involved in selling drugs that day, at least he said that, over four State witnesses."[72]

5.    "Everybody's lying but the crack-using, three time felon."[73]

6.    "Everybody is inaccurate but the man who has been convicted of three felonies –"[74]

7.    "I've misquoted him, Mr. Biri is right.  The man's been convicted of two felonies and a theft that was under a hundred dollars, so that's a misdemeanor.  And the drug paraphernalia.

---

[69]  State Rec., Vol. IV of XIII, transcript of November 29, 1995, p. 118.

[70]  State Rec., Vol. IV of XIII, transcript of November 29, 1995, pp. 118-19.

[71]  State Rec., Vol. IV of XIII, transcript of November 29, 1995, p. 119.

[72]  State Rec., Vol. IV of XIII, transcript of November 29, 1995, p. 135.

[73]  State Rec., Vol. IV of XIII, transcript of November 29, 1995, p. 135.

[74]  State Rec., Vol. IV of XIII, transcript of November 29, 1995, p. 136.

It's not three felonies, it's two felonies and two misdemeanors."[75]

8.      "So you would have to believe that man, who admitted using drugs that day, he had convictions, both felony and misdemeanor, over the people who testified today, who have no stake or interest in saying these things."[76]

Because petitioner chose to testify at trial, the evidence of his prior convictions was properly admitted. La. Code Evid. art. 609.1(A) ("In every criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions ...."); State v. Chenier, 343 So.2d 177, 179 (La. 1977) ("It is well settled that evidence of prior convictions is Admissible to question a defendant's credibility when he chooses to take the stand and testify in his own behalf."). When such evidence has been admitted, a prosecutor's reference to the fact of the convictions in his closing argument attacking the criminal defendant's credibility is proper. State v. Davis, 839 So.2d 176, 180 (La. App. 4th Cir. 2003). In the instant case, the prosecutor's comments regarding the prior convictions were clearly made in an effort to attack petitioner's credibility. Because the comments were not improper, any objection by defense counsel would have been meritless. As noted previously in this opinion, counsel cannot be considered ineffective for failing to make meritless objections.

Petitioner next contends that his counsel was ineffective when he failed to object to alleged hearsay and Confrontation Clause violations arising from the testimony of the victim, Debbie

---

[75]   State Rec., Vol. IV of XIII, transcript of November 29, 1995, p. 136.

[76]   State Rec., Vol. IV of XIII, transcript of November 29, 1995, p. 137.

Smith.[77]  The state district court rejected this claim, finding that petitioner failed to show either deficient performance or prejudice as required by Strickland.[78]  This Court agrees.  As noted previously in this opinion, the victim's testimony violated neither the state evidentiary laws regarding hearsay nor the federal Confrontation Clause.[79]  Therefore, any objection by defense counsel on those grounds would have been meritless.  Again, counsel cannot be considered ineffective for failing to make meritless objections.

Petitioner claims that his counsel was ineffective in failing to object to the admissibility of testimony regarding petitioner's flight after the crime and to the jury instruction given regarding flight.[80]

At trial, Robert Landry testified that petitioner fled after commission of the crime. Landry testified as follows:

---

[77]  Petitioner listed this as Claim No. 8 in his federal application.

[78]  State Rec., Vol. III of XIII, Order dated October 29, 2002 (denying claim number 7).

[79]  See pages 18-20 of this opinion.

[80]  Petitioner listed this as Claim No. 11 in his federal application.  The state argues that this claim is procedurally barred.  It is true that the state district court denied the claim as "repetitive" because it had been asserted "as issue 3 in defendant's supplement filed April 21, 1997."  State Rec., Vol. III of XIII, Order dated October 29, 2002 (denying claim number 10).  This Court assumes that the ruling is based on La.C.Cr.P. art. 930.4(D), which provides:  "A successive application may be dismissed if it fails to raise a new or different claim."  However, the claim raised in the 1997 was that the judge erred in admitting the flight evidence and in giving the jury instruction, not that counsel was ineffective in failing to object to those actions.  State Rec., Vol. I of XIII.  Therefore, the denial based on article 930.4(D) appears suspect.  Nevertheless, this Court need not decide the issue of whether petitioner's claim is procedurally barred, in that the claim clearly fails on the merits. See Glover v. Hargett, 56 F.3d 682, 684 (5th Cir. 1995); Wiley v. Puckett, 969 F.2d 86, 104 (5th Cir. 1992).

> So I called the dispatcher back and I asked her to give the description of the man again. She gave me the same description back. So when I seen the person standing there, I had slammed on my brakes because I was going through the intersection, and I backed up. As I was backing up, the man seen me and he took off running. And he run right in front of me, run past me. So I just turned and followed behind him. He run into a building that was like in a little circle. Well, he run into the first breezeway of the building.
>
> As I pulled up to the breezeway, I seen him standing there and he was knocking on the door. Somebody opened the door and he went into the building.[81]

Landry further testified:

> When I first spotted him, he was standing on the corner of a building that was over there, talking to some other people. So when he seen me slam on my brakes and back up, that's when he took off running. And he run right in front of me.[82]

Contrary to petitioner's contention, Landry's testimony regarding petitioner's flight was admissible under Louisiana law. The Louisiana Supreme Court has held: "Evidence of flight, concealment, and attempt to avoid apprehension is relevant. It indicates consciousness of guilt and, therefore, is one of the circumstances from which the jury may infer guilt." State v. Davies, 350 So.2d 586, 588 (La. 1977); see also State v. Fuller, 418 So.2d 591, 593 (La. 1982). Petitioner appears to contend that the evidence regarding flight was inadmissible because Landry was not a police officer. That fact is irrelevant, because "flight" evidence does not encompass only flight from police officers. Rather, "flight" evidence is proper when the suspect was simply fleeing the scene of crime or from the pursuit by private individuals. See, e.g., State v. Bell, 721 So.2d 38 (La. App.

---

[81] State Rec., Vol. IV of XIII, transcript of November 29, 1995, pp. 44-45.

[82] State Rec., Vol. IV of XIII, transcript of November 29, 1995, pp. 45-46.

5th Cir. 1998).[83]  Because Landry's testimony was not improper, any objection by defense counsel

to the testimony would have been meritless.  Again, counsel cannot be considered ineffective for

failing to make meritless objections.

As to petitioner's claim regarding the "flight" instruction, that claim should also be

rejected.  At trial, the judge instructed the jury as follows:

> If you find that the defendant fled immediately after a crime
> was committed or after he was accused of a crime, the flight alone is
> not sufficient to prove that the defendant is guilty.  However, flight
> may be considered along with all other evidence.  You must decide
> whether such flight was due to consciousness of guilt or to other
> reasons unrelated to guilt.  It is up to you to determine whether there
> was flight in this case.[84]

Because there was trial testimony by both Landry and the victim[85] regarding flight,

an instruction on flight was appropriate.  Moreover, the instruction given was legally correct.  See

State v. Walker, 650 So.2d 363, 369-70 (La. App. 5th Cir. 1995) (finding no error in the use of a

virtually identical jury charge).  Therefore, any objection by defense counsel to the instruction would

have been meritless.  Again, counsel cannot be considered ineffective for failing to make meritless

objections.

---

[83]  Petitioner cites La.Rev.Stat.Ann. § 14:108.  That statute criminalizes, *inter alia*, flight from a police officer.  However, that statute has no applicability in the instant case.  Petitioner was not charged with violating that statute, and the statute in no way limits the general admissibility of "flight" evidence in criminal trials.

[84]  State Rec., Vol. IV of XIII, transcript of November 29, 1995, p. 142.

[85]  The victim testified that petitioner ran from the cab after committing the robbery.  State Rec., Vol. IV of XIII, transcript of November 29, 1995, p. 36.

Petitioner next claims that his counsel was ineffective when he failed to subpoena Taifa P. Griffith to testify at trial.[86]  Griffith was originally charged as a co-defendant with respect to the crime at issue in this case; however, the charges against Griffith were subsequently dropped. Petitioner contends that his counsel should have interviewed and subpoenaed Griffith to testify because he was present at the scene of the alleged crime and could support petitioner's version of the events.

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002) (citing Sayre v. Anderson, 238 F.3d 631, 635-36 (5th Cir. 2001)).  To show the prejudice required to support an ineffective assistance claim premised on the failure to call a witness, a petitioner "'must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial.'" Evans, 285 F.3d at 377 (quoting Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985)).  In the instant case, petitioner has not provided any corroboration that Griffith would have testified in a manner consistent with petitioner's

---

[86]  Petitioner listed this as Claim No. 13 in his federal application. The state argues that this claim is procedurally barred.  It is true that the state district court denied the claim as "repetitive" because it had been asserted in petitioner's post-conviction filing of April 3, 1997.  State Rec., Vol. III of XIII, Order dated October 29, 2002 (denying claim number 12).  This Court assumes that the ruling is based on La.C.Cr.P. art. 930.4(D), which provides: "A successive application may be dismissed if it fails to raise a new or different claim."  However, as previously noted, a claim dismissed on the ground that it is repetitive is not procedurally barred.  Rather the Court simply looks back to the prior decision addressing the claim.  The prior decision rejected petitioner's claim because it had been reviewed on appeal; therefore, the prior claim was also essentially rejected on the basis that it was repetitive.  State Rec., Vol. I of XIII, Order dated April 29, 1997.  However, in that appeal, the claim was not expressly raised; rather, appellate counsel filed only an Anders brief.  State v. Lapell, No. 96-KA-463 (La. App. 5th Cir. Nov. 14, 1996) (unpublished); State Rec., Vol. I of XIII; see Anders v. California, 386 U.S. 738 (1967).  Because the claim was not expressly raised or decided on the merits in that direct appeal, this Court cannot "look back" to that decision.

version of the facts or, for that matter, that he would have testified at trial at all.[87]  Petitioner has,

therefore, failed to establish either that counsel was deficient or that prejudice resulted from the

failure to call Griffith.

Petitioner claims that counsel was also ineffective in failing to investigate the

predicate conviction used to enhance petitioner's sentence and in failing to file a written objection

to the use of that conviction.[88]  Petitioner claims that counsel should have argued that the predicate

conviction was invalid on several grounds.

First, petitioner argues an investigation would have revealed that his guilty plea to

the predicate offense was involuntary because he was not adequately informed of his rights, the

elements of the charge against him, or the mandatory minimum sentence he faced.  He further argues

that his counsel was ineffective in failing to file a written objection to the use of that conviction on

---

[87]   The Court notes that petitioner claims that his counsel suspected that Griffith would assert his Fifth Amendment privilege against self incrimination if subpoenaed.  Rec. Doc. 1, supporting memorandum, pp. 49-50.  This Court shares that suspicion, in that petitioner contends that the instant case involves not a robbery but instead a drug deal gone awry.  It is unlikely that Griffith would have willingly placed himself in jeopardy of being charged with a drug offense in order to serve as an alibi witness for petitioner.  Nevertheless, such suspicions aside, petitioner bears the burden in this proceeding of demonstrating that Griffith would have testified in a way that would have bolstered the defense.  Petitioner simply has made no such showing.

[88]   Petitioner listed this as Claims No. 12, 14, and 15 in his original federal application and as Claim No. 16 in his supplement (Rec. Doc. 10).

those bases.[89]  On direct appeal, the Louisiana Fifth Circuit Court of Appeal rejected those claims,

holding:

> By these assignments of error the Defendant argues that he
> was erroneously adjudicated a second felony offender because the
> guilty plea conviction used to enhance his sentence as a second felony
> offender was unconstitutionally obtained. He also argues that his
> counsel during these proceedings was ineffective for failing to file a
> written response to the habitual offender bill of information and for
> failing to investigate and find that the prior guilty plea was
> unconstitutionally obtained. More specifically, the Defendant argues
> that the minute entry, transcript and waiver of rights form introduced
> as proof of the predicate offense did not establish that the Defendant
> was advised of the elements of the offense or the mandatory
> minimum sentence that could be imposed prior to entering his plea.
> Therefore, the Defendant argues that this guilty plea conviction
> should not have been used to support the trial court's finding that he
> is a second felony offender and his counsel was ineffective for not
> objecting to the use of the conviction on these grounds. We disagree.
>        A review of the record indicates that the Defendant was
> adequately advised of his <u>Boykin</u> [FN] rights as well as other rights
> prior to the entry of his plea to the offense of attempted simple
> burglary of an inhabited dwelling. Both his attorney and the trial
> judge went over the rights with the Defendant in his waiver of rights
> form. Further, the transcript of the guilty plea proceedings indicates
> that the trial judge went over these rights with him again during the
> proceedings. The record also indicates that the Defendant understood
> the elements of the offense with which he was charged. When asked
> by the trial court if he knew what he did wrong, the Defendant
> responded that he broke into a house. Further, the record makes it
> clear that the Defendant pled guilty as part of a plea bargain where he
> was promised and was given a suspended sentence in return for his
> guilty plea. There is nothing in this record that indicates that the
> Defendant's plea was not knowing and voluntary, in other words,
> constitutional.  And the Court notes that the Defendant does not

---

[89]    The state argues that these claims are procedurally barred.  It is true that the state district court
denied these claims as repetitive because they had been addressed on the merits on direct appeal.
State Rec., Vol. III of XIII, Order dated October 29, 2002.  However, as previously noted, a claim
dismissed on the ground that it is repetitive is not procedurally barred.  Rather the Court simply looks
back to the prior decision addressing the claim.

herein argue that his plea was not knowingly and voluntarily entered. Therefore, we also find nothing prejudicial about defense counsel's failure to object to the use of the conviction, because we find that there was no basis for objection.  These assignments of error lack merit.

[FN] Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).[90]

Petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Therefore, under the deferential standard mandated by the AEDPA, petitioner's claims with respect to these issues should be denied.

Petitioner next argues that his counsel was ineffective in failing to investigate the predicate conviction used to enhance petitioner's sentence and in failing to file a written objection to the use of that conviction on the ground that was based on a bill of information which was legally insufficient.  Even if petitioner is incorrect in contending that the bill of information which led to his prior conviction was legally insufficient, that fact was on no moment with respect to the habitual offender proceedings.  Because petitioner did not challenge the sufficiency of the bill of information before his conviction in the prior proceedings, the alleged defect in the bill of information was waived and his resulting conviction was in no way rendered invalid.  State v. Allen, 824 So.2d 344 (La. 2002); State v. Robichaux, 412 So.2d 1313, 1321 (La. 1982) ("a defendant may not complain of the insufficiency of an indictment after verdict unless it is so defective that it does not set forth an identifiable offense against the laws of this state, and inform the defendant of the statutory basis

---

[90]   State v. Lapell, 777 So.2d 541, 549-50 (La. App. 5th Cir. 2000) (No. 00-KA-1056); State Rec., Vol. II of XIII.

of the offense"); State v. Storms, 406 So.2d 135, 136-37 (La. 1981).[91] Therefore, petitioner's contention that the predicate conviction could not be used to enhance his current sentence is incorrect. Accordingly, his claim that his counsel was ineffective in failing to investigate and to file a written objection to the use of the predicate conviction on that basis necessarily fails.

Petitioner next argues that his counsel was ineffective in failing to investigate the predicate conviction used to enhance petitioner's sentence and in failing to file a written objection to the use of that conviction on the basis that his prior plea was involuntary because he was not advised of his right to proceed to trial without counsel and to represent himself. However, neither Boykin nor any other jurisprudence of which this Court is aware holds that the failure to advise a criminal defendant of the right of self-representation renders a guilty plea involuntary. In light of that fact, that petitioner's contention that the predicate conviction could not be used to enhance his current sentence is legally unsupported, and, therefore, his claim that his counsel was ineffective in failing to investigate and to file a written objection to the use of the predicate conviction on that basis necessarily fails.

---

[91] The bill of information alleged that petitioner "violated R.S. 14:27:62.2 in that he did attempt to commit simple burglary of the inhabited dwelling and structure located at 1805 1/2 Bridge City Ave., Bridge City, the home and place of abode of Sylvia Thibodeaux ...." State Rec., Vol. III of XIII, bill of information. Petitioner's specific contention is that the state essentially used a "short form" bill of information, but that a "short form" bill of information cannot be used for the charge of simple burglary of an inhabited dwelling. See La.C.Cr.P. art. 465. He further contends that the bill of information did not include all of the essential facts required for a "long form" charging document as required by La.C.Cr.P. art. 464. This is precisely the type of defect found to be waived under Louisiana law by the Louisiana Supreme Court in Storms. Moreover, in the instant case, it is abundantly clear that the bill of information charged an identifiable offense and informed petitioner of the statutory basis of that offense.

Petitioner also claims that his appellate counsel was ineffective in not asserting on appeal that the trial judge erred in overruling defense objections to the prosecutor's questions regarding whether petitioner's prior drug paraphernalia conviction was based on possession of a crack pipe and whether petitioner was employed at the time of the current offense.[92] However, even if the Court assumes that an appellate court would have found that the rulings were erroneous, petitioner's conviction would not have been reversed on that basis. Under Louisiana law, an appellate court will not reverse a criminal defendant's conviction based on an erroneous evidentiary ruling if the error was harmless. See La.C.Cr.P. art. 921 ("A judgment or ruling shall not be reversed by an appellate court because of an error, defect, irregularity, or variance which does not affect substantial rights of the accused."); State v. Hurst, 606 So.2d 965, 969 (La. App. 3rd Cir. 1992) (a trial judge's error in failing to sustain defense objections is subject to a harmless error analysis). The prosecutor's questions dealt with seemingly inconsequential matters and could not conceivably have had any effect of the outcome of petitioner's trial in light of the overwhelming evidence of his guilt. Undoubtedly, the appellate courts would have, at best, found the rulings to be harmless beyond a reasonable doubt. Accordingly, this Court finds that petitioner's appellate counsel did not perform deficiently in failing to raise the claims on appeal, and petitioner certainly has not demonstrated that he suffered any prejudice resulting from that failure.

### Failure to Comply with Order of Remand

In a supplemental filing, petitioner amended his federal application to assert a claim that the state district court failed to comply with the remand order of the Louisiana Fifth Circuit

---

[92] Petitioner listed this as Claim No. 10 in his federal application.

Court of Appeal.[93]  When affirming petitioner's conviction and sentence on the first direct appeal,

the intermediate appellate court remanded the matter for the sole purpose of having the state district

court inform petitioner of the prescriptive period for filing for state post-conviction relief as required

by La.C.Cr.P. art. 930.8.[94]  As an initial matter, even if the trial court had failed to comply with the

appellate court's order, that would have amounted to, at most, a violation of state law, not federal

constitutional law as required for *habeas* relief.  In any event, contrary to petitioner's assertion, the

state district court did in fact comply with the appellate court's directive by issuing an order on

December 2, 1996, advising petitioner of the provisions of article 930.8.[95]  Moreover, petitioner not

only timely filed for state post-conviction relief but he was even granted a new out-of-time appeal.

This claim has no merit.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus*

relief filed by David Lapell be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and

recommendation contained in a magistrate judge's report and recommendation within 10 days after

being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from

---

[93]  Rec. Doc. 11.

[94]  State v. Lapell, No. 96-KA-463 (La. App. 5th Cir. Nov. 14, 1996) (unpublished); State Rec., Vol. I of XIII.

[95]  State Rec., Vol. I of XIII, Order dated December 2, 1996.

a failure to object.  <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en

banc).

New Orleans, Louisiana, this twenty-sixth day of July, 2005.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**